**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | | |
|---|---|---|
| HOMER IRA LOCKHART | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | CIVIL ACTION FILE |
| SOUTHERN HEALTH PLAN, INC. PLAN | : | |
| ADMINISTRATOR, A SUBSIDIARY AND | : | NO. 4:04-CV-0006-WLS-MSH |
| IN COOPERATION WITH BLUE CROSS/ | : | |
| BLUE SHIELD OF MEMPHIS, TENNESSEE, | : | |
| BLUE CROSS/BLUE SHIELD OF | : | |
| CHATTANOOGA, TENNESSEE, ET AL. | : | |
| | : | |
| Defendants. | : | |

## TRIAL ORDER

Plaintiff filed this action on January 21, 2004, against Blue Cross Blue Shield of

Tennessee and Southern Health Plan, Inc., claiming multiple violations of the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*  On July

20, 2006, the Court issued an order which granted in part and denied in part Defendants'

motion for summary judgment and which denied Plaintiff's motion for summary

judgment.  (Order 9, July 20, 2006, ECF No. 98.)  Thereafter, the only remaining claim

was Plaintiff's claim for equitable relief for brief of fiduciary duties pursuant to ERISA §

502(a)(3), 29 U.S.C. § 1132(a)(3).  (*Id.* at 10.)  The parties consented to having the bench

trial in this case held before the Magistrate Judge in Columbus, Georgia.  (ECF Nos. 165,

166.)  The Court held a bench trial on this issue on October 17, 2011.  The parties

submitted trial briefs and proposed findings of fact and conclusions of law.  (ECF Nos.

188, 190-193.)  The Court now makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

**I.     Plaintiff's Coverage**

1.

Plaintiff began working for Burkeen Construction Company in the early 1990's and was a participant in Burkeen's ERISA-governed health benefits plan ("the Plan"). (Trial Tr. 134:1-6, 138:19-25, 143:22-144:10.)

2.

Plaintiff's employment with Burkeen terminated on December 7, 1996.  (Trial Tr. 136:7-10.)

3.

At that time, health benefits under the Plan were funded by a group insurance policy issued to Burkeen by Jefferson Pilot Financial Insurance Company.  (Trial Tr. 144:21-145:6; Pl.'s Ex. 7.)

4.

The termination of his employment was a "qualifying event" which entitled Plaintiff to obtain continuation health insurance coverage for 18 months pursuant to the Consolidated Omnibus Budget Reconciliation Act ("COBRA").  29 U.S.C. § 1163(2).

5.

Plaintiff's COBRA continuation coverage was provided by Jefferson Pilot from December 7, 1996, when his employment ended, through March 30, 1997, when Burkeen

changed insurance carriers.  (Pl.'s Ex. 7; Trial Tr. 74:24-75:8.)

6.

Burkeen transferred its group health insurance from Jefferson-Pilot to BlueCross BlueShield of Memphis [hereinafter "BCBS Memphis"] on April 1, 1997.  (Pl's Ex. 7; Trial Tr. 75:6-8.)

7.

As a result, plaintiff's COBRA continuation coverage was provided by BCBS Memphis from April 1, 1997, to May 31, 1998, the end of plaintiff's 18-month COBRA continuation period.  (Trial Tr. 74: 24 – 75:8.)

8.

Burkeen employees were offered health care benefits through either a Preferred Provider Organization ("PPO") or a Health Maintenance Organization ("HMO").  (Trial Tr. 287:13-288:20.)

9.

Benefits under the PPO plan were paid by BCBS Memphis, and benefits under the HMO plan were paid by Southern Health Plan, Inc., which was a subsidiary of BCBS Memphis.  (Trial Tr. 335:14–336:2.)

10.

Plaintiff elected health insurance under the PPO plan.  (Pl.'s Ex. 14; Trial Tr. 288:21 – 289:19.)

**II.      Summary Plan Description ("SPD")**

11.

When Plaintiff first became insured under Burkeen's group insurance program, he was not provided with any written materials.  (Trial Tr. 145:12-17, 148:11-149:9.) Instead, Plaintiff was just told that he was insured by Jefferson Pilot.  (Trial Tr. 145:18-146:2.)

12.

Plaintiff never received an employee benefits handbook or summary plan description from Burkeen.  (Trial Tr. 150:5-151:25; 162:6-10.)

13.

The only information Plaintiff received from Burkeen regarding health insurance or other benefits was (1) a letter from Linda Moore dated April 1, 1997 (Pl.'s Ex. 7); (2) a Benefits Summary enclosed with that letter (Pl.'s Ex. 5); and (3) a letter from Ms. Moore within 30 days of the termination of plaintiff's employment enclosing a form for him to complete to elect COBRA coverage.  (Trial Tr. 150:15-151:10, 154:12-19, 157:17-159:4, 159:19-160:4, 164:10-22, 168:17-19.)

14.

The Benefits Summary that plaintiff received from Burkeen was not a Summary Plan Description.  (Pl.'s Ex. 5; Trial Tr. 286:18-287:9.)

15.

The Benefits Summary is a document that provides "the major components of the cost sharing between the member and the carrier."  (Trial Tr. 286:23-287:1.)   Such

documents "are typically distributed during enrollment meetings so that members can see what the benefit plan is going to be." (Trial Tr. 287:2-5.) A benefit summary would be provided for each insurance option. (*Id.* at 287:5-9.)

16.

BCBS Memphis would not have issued a summary plan description. (Trial Tr. 285:12-286:1.) Instead BCBS Memphis would have issued a "benefit booklet" which would require additional information to make it a summary plan description. (*Id.*)

**III.    Contracts between Defendants and Burkeen**

17.

The respective roles and responsibilities of Burkeen and BCBS Memphis were spelled out in two documents—an Enrollment Agreement dated April 1, 1997 (Defs.' Ex. 1), and a Comprehensive Major Medical Contract ("the Contract") effective April 1, 1997 (Defs.'s Ex. 2).

18.

The Contract was between Burkeen (referred to as "the Group") and Memphis Hospital Service and Surgical Association. Memphis Hospital Service and Surgical Association was the legal name of the company which was doing business as BCBS Memphis. (Trial Tr. 292:14-293:2.)

19.

Under the Enrollment Agreement, Burkeen was responsible, as the employer, "[t]o perform all functions necessary to keep the group health benefits program provided, in part, through the group contract in compliance with [ERISA]." (Defs.' Ex. 1 at 3 ¶ 6.)

5

20.

In the Enrollment Agreement, Burkeen acknowledged that

with respect to the establishment and maintenance of the group contract
providing health coverage for its employees and eligible dependents, it is
the "plan sponsor" as defined by ERISA and that it, or it's [sic] duly
designated representative, will act as the "plan administrator" for all
purposes under ERISA including any and all reporting, disclosure or other
fiduciary requirements.

(*Id.* at 3 ¶ 6.)

21.

The Enrollment Agreement further provided that it "does not constitute an

appointment by the employer of Blue Cross and Blue Shield of Memphis as a 'plan

administrator' or a 'fiduciary' for purposes of ERISA." (*Id.*)

22.

Both the Enrollment Agreement and the Comprehensive Major Medical Contract

described the rights of Burkeen employees to obtain continuation group health insurance

coverage under COBRA, and to obtain individual conversion coverage under the Health

Insurance Portability and Accountability Act of 1996 ("HIPAA"), 29 U.S.C. § 1181 *et

seq.* (Defs.' Ex. 1 at 1, 3; Defs. Ex. 2 at 18-19.)

23.

The Enrollment Agreement provided that "[u]pon termination [of employment],

employer shall be solely responsible for providing, underwriting and administering any

continuation coverage." (Defs.' Ex. 1 at 1 ¶ 5.)

24.

This meant that Burkeen accepted responsibility for handling its employees' continuation coverage under COBRA, including all of the notices required by COBRA. (Trial Tr. 280:13-24.)

25.

Under the Enrollment Agreement, Burkeen was "[t]o provide Blue Cross and Blue Shield of Memphis a roster of all employees" at least once a year.  (Defs.' Ex. 1 at 2 ¶ 4.)

26.

Further, Burkeen was responsible for notifying BCBS Memphis if a former employee wished to obtain either continuation coverage under COBRA or an individual conversion policy under HIPPA.  (Defs.' Ex. 1 at 2 ¶ 3.)

27.

The Enrollment Agreement provided (with a typographical error) as follows:

An employee [sic] agrees that it will notify Blue Cross and Blue Shield of Memphis of those persons desiring continuation coverage and/or conversion coverage under Federal or State Law as provided for either in the group contract and/or herein.

(*Id*; Trial Tr. 281:12-282:4.)

28.

This meant that if the coverage of an employee (or a former employee) was terminating, Burkeen was to notify BCBS Memphis of that occurrence.  (Trial Tr. 282:5-17.)

29.

Upon receipt of such notification from Burkeen, BCBS Memphis agreed "[t]o make available conversion coverage to eligible employees and their dependents as required by applicable law consistent with the requirements set forth herein and in the group contract." (Defs.' Ex. 1 at 1 ¶ 4.)

30.

The Comprehensive Major Medical Contract provided: "It is the Group's [Burkeen's] responsibility to notify the Association [BCBS Memphis] of any requested changes in coverage." (Defs.' Ex. 2 at 2 ¶ 7.)

31.

Further, under the heading "Records of Member Eligibility and Changes in Member Eligibility," the Contract provided:

> The Group must furnish the Association with any data required by the Association for coverage of members under this contract. In addition, the Group must provide prompt notification to the Association of the effective date of any changes in a member's coverage status under this contract.
>
> All notification by the Group to the Association must be furnished on forms approved by the Association. The notification must include all information reasonably required by the Association to effect changes.

(*Id*. at 17.)

32.

In terms of the day-to-day communications and working relationship between Burkeen and BCBS Memphis, this provision meant that BCBS Memphis was "expecting to receive information about any new employees or new enrollees from Burkeen and with

as much information as is required for [BCBS Memphis] to provide the coverage.  And then if there's any change to that, [BCBS Memphis is] expecting to be notified of that change as well."  (Trial Tr. 294:4-295:12.)

33.

Furthermore, Burkeen agreed that it would be "liable for the cost of all contract benefits which are provided for services rendered to a terminated member because of the Group's failure to notify [BCBS Memphis] of the member's termination on or before the termination date."  (Defs.' Ex. 2 at 17; TT, pp. 295:13-296:4.)

34.

BCBS Memphis' records did not show that Plaintiff's coverage was COBRA continuation coverage, rather than health insurance for an active Burkeen employee, when it became the group health insurer.  (Pl.'s Ex. 13.)

III.    **Time period after Plaintiff's termination**

35.

BCBS Memphis merged with BCBS Tennessee (BCBST) over a period of about two to three years.  The merger was finalized in January 1999.  (Trial Tr. 263:4-12.)

36.

When it was determined that the membership, contract, and billing operations would be assumed by BCBST, a group of BCBST employees went to Memphis to box up, inventory, and bring back documents to make sure that everything that was pending was processed, and that records were updated.  (Trial Tr. 263:21 – 264:8.)

37.

During that process, there was a transfer of records and data from BCBS Memphis to BCBST that included both paper documents and computer system information.  (Trial Tr. 264:9-18.)

38.

As part of the transfer of records, information regarding Burkeen's group health insurance was added to BCBST's "FACETS" computer system.  (Pl.'s Ex. 13 at 3.)

39.

By that time, Plaintiff's 18 months of COBRA continuation coverage had ended and Plaintiff had already purchased a different insurance policy from another insurer. (Trial Tr. 74:24-75:8, 176:3-17; Pl.'s Ex. 11 at 3.)

40.

When the member information was moved from the old computer system to the new computer system, BCBST also changed each member's ID number.  (Trial Tr. 304:1-13.)

41.

The new computer system interpreted the change of Mr. Lockhart's ID number as a terminating event, and because Mr. Lockhart lived in Georgia rather than Tennessee, the computer system automatically generated an inter-plan transfer letter to Mr. Lockhart. (Trial Tr. 302:15-305:11.)

42.

The letter stated: "Our records indicate your recent group coverage has terminated

and you do not reside in this service area.  You will need to notify the BlueCross BlueShield Plan which serves the area in which you reside."  (Pl.'s Ex. 3.)

43.

In response to that letter, Plaintiff contacted BlueCross BlueShield of Georgia ("BCBS Georgia"), in December 1998, and sought to purchase a conversion policy of health coverage.  (Trial Tr. 65:23-66:4; *see* Pl.'s Ex. 13 at 3-4.)

44.

BCBS Georgia informed plaintiff that he would need to provide a Certificate of Creditable Coverage.  (Pl.'s Ex. 13 at 3.)

45.

BCBS Memphis was supposed to receive notice that an employee's coverage was terminating.  This notification would trigger BCBS Memphis to issue a certificate of credible coverage "to [the] member so [that the member] can use [the certificate of credible coverage] when [the member] pursue[s] insurance elsewhere."  (Trial Tr. 300:11-25.)

46.

However, the only way BCBS Memphis would know that Plaintiff's COBRA period had come to an end would have been if Burkeen had notified BCBS Memphis. (Trial Tr. 301:7-12.)

47.

Typically, under BCBS's system, when BCBS is notified of a termination of coverage, BCBS would do one of two things: "[e]ither the system would be programmed

to automatically produce a certificate of creditable coverage printed out and it goes to the mail room and gets mailed, or it could have printed a record to a report, and that report could have been given to an employee who takes that information about the termination and puts it into a letter format and actually creates and mails a letter themselves." (Trial Tr. 301:22-302:7.)

48.

If Burkeen did not inform BCBS Memphis that Plaintiff's COBRA continuation coverage had ended, BCBS Memphis would not have known to send a certificate of credible coverage. (Trial Tr. 302:9-14.)

49.

Plaintiff did not receive a certificate of credible coverage from either BCBS Memphis, Jefferson Pilot, or Burkeen. (Trial Tr. 93:3-19, 161:11-23, 172:18-173:5.)

50.

Plaintiff offered no proof that Burkeen ever notified BCBS Memphis that his COBRA continuation period had ended, and he specifically informed the Court that he could not prove that Burkeen provided such notice. (Trial Tr. 296:22-297:11.)

51.

The only certificate of credible coverage Plaintiff received is Plaintiff's Exhibit 2, which was sent to Plaintiff by BCBST on January 13, 1999. (Pl.'s Ex. 2; *see* Trial Tr. 61:23-62:2.)

52.

The certificate confirmed Plaintiff's coverage period from April 1, 1997, until

June 1, 1998.  (Pl.'s Ex. 2.)

53.

Plaintiff presented the certificate of creditable coverage to BCBS Georgia in an attempt to purchase an individual conversion policy.  However, because Plaintiff had more than a 63-day gap in coverage and did not have continuous coverage with BCBS for 12 months prior to his application, he was not eligible for an individual conversion policy.  (*See* Pl.'s Ex. 4 ("This coverage is available provided you meet the eligibility requirements and provided you have had 12 months of continuous coverage with Blue Cross Blue Shield."), Pl.'s Ex. 13 at 3-4.)

**IV.    BCBST's offer of retroactive conversion coverage**

54.

Because of the confusion surrounding plaintiff's ability to purchase an individual conversion policy, BCBST offered in January 1999 to provide a conversion health insurance policy to plaintiff, retroactive to May 31, 1998, the date when his COBRA continuation coverage under the Plan had terminated.  (Trial Tr. 203:25-205:4; *see* Pl.'s Ex. 13 at 3-4, Pl.'s Ex. 15.)

55.

In order for the offered BCBST policy to be retroactive to June 1, 1998, Plaintiff would have been required to pay the premiums from May 31, 1998, to January 1999. (Pl.'s Ex. 13 at 4, Pl.'s Exs. 15-16.)

56.

Plaintiff could have accepted BCBST's offer, paid the retroactive premiums, and

then transferred the BCBST policy to an individual conversion policy issued by BCBS Georgia, where he resided. (Trial Tr. 309:23 – 310:24.)

### 57.

Although Plaintiff understood that he could have purchased the BCBST policy and transferred it to BCBS Georgia, he rejected BCBST's offer to provide an individual conversion policy because he believed that the coverage was not as good as a BCBS Georgia policy and because he believed that the premiums were too high. (Trial Tr. 203:17-207:20.)

### 58.

Beginning in January 1999, Plaintiff complained to BCBST, the Tennessee Department of Insurance, and the Georgia Department of Insurance about the failure of BCBST to provide him with notice of his right to a conversion policy when his COBRA continuation coverage ended in May 1998. (*See* Def.'s Exs. 8-9; Pl.'s Ex. 8-13.)

### 59.

Although BCBST offered Plaintiff in January 1999 the remedy he now seeks, Plaintiff declined BCBST's offer, waited five years until January 21, 2004, then filed the present lawsuit. (*See* Compl. 1, Am. Compl. 5.)

### 60.

As of the filing of this lawsuit, neither Burkeen nor BCBS Memphis are entities in existence. (Trial Tr. 219:10-19; 263:4-16.)

## CONCLUSIONS OF LAW

### I.      Statute of Limitations

A.      Three-year statute of limitations pursuant to 29 U.S.C. § 1113(2)

1.

When a plan participant brings an action for breach of fiduciary duty under ERISA, there is generally a six year statute of limitations.  29 U.S.C. § 1113(1).  However, if the plaintiff "had actual knowledge of the breach or violation," the limitations period is three years.  29 U.S.C. § 1113(2).

2.

This three year limitations period applies "except [] in the case of fraud or concealment," in which case the limitations period reverts back to the six year limitations from "the date of discovery of such breach or violation."  29 U.S.C. § 1113.

3.

Consequently, plaintiffs who have actual knowledge of a breach cannot delay bringing an action.  Plaintiffs with actual knowledge *must* commence their suit within three years of discovery of the alleged breach.  29 U.S.C. § 1113; *see also, e.g., New Orleans Emp'rs Int'l Longshoreman's Assoc., AFL-CIO Pension Fund v. Mercer Inv. Consultants*, 635 F. Supp. 2d 1351, 1378 (N.D. Ga. 2009).

4.

"Courts have construed the 'actual knowledge' requirement strictly; constructive knowledge is inadequate, rather, the plaintiff must have knowledge of the facts or transaction that constituted the breach in order to trigger the statute of limitations."

15

*Mercer Inv. Consultants*, 635 F. Supp. 2d at 1378 (citation omitted).  "[I]t is not enough that [a plaintiff] had notice that something was awry; he must have had specific knowledge of the actual breach of duty upon which he sues."  *Brock v. Nellis*, 809 F.2d 753, 755 (11th Cir. 1987).

5.

However,

> [a]t the same time, the relevant knowledge for triggering the statute of limitations is knowledge of the *facts* or *transaction* that constituted the alleged violation.  Consequently, it is not necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or knowledge of its illegality . . . .  Suffice it to say that to have actual knowledge of a violation to trigger ERISA's three-year statute of limitations, a plaintiff must know of the essential facts of the transaction or conduct constituting the violation.

*Martin v. Consultants & Adm'ns, Inc.*, 966 F.2d 1078, 1086 (7th Cir. 1992) (emphasis in original); *see also Brock*, 809 F.2d at 755 ("To us, section 1113(a)(2)(A) means only that once the [plaintiff] learns of the facts that support his allegation of illegality, he has no more than three years in which to bring his suit.")

6.

As this Court has already found, "Plaintiff had specific knowledge of the alleged actual breach of duty upon which he sues by March 1999 at the latest."  (Order 5, July 20, 2006, ECF No. 98.)  This finding was confirmed at trial by Plaintiff's testimony that he called Blue Cross and Blue Shield of Georgia in January and March 1999 because he believed that his ERISA rights had been violated.  (Trial Tr. 101:1-104:13, 224:6-226:14, ECF No. 189; Pl.'s Ex. 13 at 4.)

7.

Plaintiff was therefore required to file this action within three years of March 1999—March 2002.  29 U.S.C. § 1113(2).

8.

Plaintiff did not file suit until January 21, 2004, almost two years after the limitations period expired.  (*See* Compl. 1, ECF No. 1.)

9.

Consequently, this action is time-barred unless Plaintiff has established fraud or concealment by Defendants which would entitle Plaintiff to the benefit of the six-year statute of limitations.  29 U.S.C. § 1113.

B.      Fraud or Concealment

10.

In order to constitute fraud or concealment such that the six year statute of limitations is applicable, a plaintiff must establish that the defendant engaged in "an active step of concealment[.]"  *Mellon Bank, N.A. ex rel. Weiss Packing Co., Inc. Profit Sharing Plan v. Levy*, 71 F. App'x 146, 148 (3d Cir. 2003).  "[T]here must be conduct beyond the breach itself that has the effect of concealing the breach from its victims."  *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 242 F.3d 497, 503 (3d Cir. 2001).

11.

Thus, there must be "evidence that the defendant took *affirmative steps* [at any point] to hide its breach of fiduciary duty."  *Id.* (internal quotation marks and citation omitted) (emphasis and alteration in original); *see also Corral v. S. Cal. Gas Co.*, 210

17

F.3d 382, 382 (9th Cir. 2000) ("[T]here must be evidence that the employer either attempted to defraud the plaintiff or concealed its fiduciary breach."); *J. Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1255 (1st Cir. 1996) (applying fraudulent concealment requirements to § 1113); *Larson v. Northrop Corp.*, 21 F.3d 1164, 1173 (D.C. Cir. 1994) ("There must be actual concealment—i.e., some trick or contrivance intended to exclude suspicion and prevent inquiry.") (internal quotation marks and citation omitted); *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1095 (7th Cir. 1992) (requiring actual concealment).

12.

Plaintiff alleges in his First Amended Complaint that "[t]he Plan Administrator failed to provide { Timely Notice } thereby concealing / misleading plaintiff of the conversion rights free of new-preexisting waiting period as shown in plaintiffs' [sic] original Complaint (Document 1) and exhibits (A) (B) (C)."  (First Am. Compl. 6; *see also* Compl. ¶ 79.)  The "Timely Notice" that Plaintiff refers to is a Certificate of Credible Coverage.  (First Am. Compl. 6.)  Plaintiff appears to believe that Defendants' failure to provide him with a Certificate of Credible Coverage is a concealment of a material fact.  (Pl.'s Mot. to File Revised Second Am. Compl. 5, ECF No. 50.[1])

13.

Plaintiff, however, has presented no evidence that the Defendants' failure to provide a Certificate of Credible Coverage was an affirmative action on the part of

---

[1]  The Court notes that Plaintiff's motion to file a second amended complaint was denied on July 22, 2005.  (Order 7, July 22, 2005, ECF No. 71.)

Defendants to hide a breach of their fiduciary duty.  To the contrary, Plaintiff argues that the Defendants' failure to provide him with a certificate of credible coverage is in and of itself a breach of their fiduciary duty.  (Trial Tr. 16:16-23, 19:23-20:7.)

14.

Plaintiff's failure to provide any evidence of fraud or concealment on the part of Defendants is fatal to his claim.

15.

Without fraud or concealment, Plaintiff does not get the benefit of the six-year statute of limitations.  Thus, Plaintiff's limitations period began to run from the time the time he received actual notice—March 1999—and expired three years later in March 2002.  29 U.S.C. § 1113(2).

16.

Plaintiff did not file this action until January 21, 2004, almost two years after the expiration of the statute of limitations.  (*See* Compl. 1)  Plaintiff's claims are therefore time-barred.

**II.      Breach of Fiduciary Duty**

17.

Even if Plaintiff's claims were not time-barred as explained above, Plaintiff would not be entitled to recover under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3).

A.      Plaintiff has failed to establish that Defendants were fiduciaries

18.

"To establish liability for a breach of fiduciary duty under any of the provisions of

19

ERISA § 502(a), a plaintiff must first show that the defendant is in fact a fiduciary with respect to the plan. *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277 (11th Cir. 2005) (citation omitted).

19.

A fiduciary is a person defined by the plan as a fiduciary or "anyone else who exercises discretionary control or authority over the plan's management, administration, or assets[.]" *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993); *see also* 29 U.S.C. § 1002(21)A. "Fiduciaries are assigned a number of detailed duties and responsibilities, which include the proper management, administration, and investment of [plan] assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." *Mertens*, 508 U.S. at 251 (internal quotation marks and citation omitted) (alteration in original).

20.

Under ERISA, "a party is a fiduciary only to the extent that it performs a fiduciary function." *Cotton*, 402 F.3d at 1277 (internal quotation marks and citations omitted). Thus, "fiduciary status . . . is not an all-or-nothing concept, and a court must ask whether a person is a fiduciary with respect to the particular activity at issue." *Id.*

21.

At trial Plaintiff stated that he was going to show that Defendants had a fiduciary obligation to "notify [him] of [his] rights and obligations under that law [ERISA.]" (Trial Tr. 32:17-33:2.) Specifically, Plaintiff contends he should have been notified of his right to obtain conversion coverage and that he was entitled to a certificate of credible

20

coverage.  (Trial Tr. 29:18-30:1.)

22.

Since Plaintiff has complained about the administration and availability of conversion coverage and the failure to be provided with a certificate of credible coverage, the Court focuses on BCBS Memphis's obligations concerning those two activities to determine whether it was a fiduciary.

23.

The Court finds that BCBS Memphis was not a Plan fiduciary for any purpose other than making claim decisions with respect to health care benefits.

24.

BCBS Memphis's Enrollment Agreement with Burkeen specifically provided that BCBS would "make available conversion coverage to eligible employees and their dependents as required by applicable law and consistent with the requirements set forth herein and in the group contract."  (Defs.' Ex. 1 at 1, ¶ 4.)[2]

25.

BCBS also guaranteed to "make available claims processing services and coverage for benefits under continuation coverage required by Tennessee law and . . . Federal law[.]"   However, the Enrollment Agreement provided that "[u]pon termination,

---

[2]  The Court looks to the contract between BCBS Memphis and Burkeen to determine whether Defendants were administrators with respect to Plaintiff's plan because Plaintiff was enrolled in BCBS Memphis's PPO plan.  (Pl.'s Ex. 14.)  Plaintiff was not a member of Southern Health Plan's HMO plan.  (*Id.*)  Regardless, the contract between Southern Health Plan, Inc. and Burkeen contains nearly identical provisions which provide that Burkeen is the plan administrator and plan sponsor.  (Pl.'s Ex. 28 at 1-3.)

21

[Burkeen] shall be solely responsible for providing, underwriting and administering any continuation coverage." (Defs.' Ex. 1 at 1, ¶ 5.)

26.

Furthermore, the Enrollment Agreement provides that it was Burkeen's responsibility to "furnish to Blue Cross and Blue Shield of Memphis on at least a monthly basis . . . such information as may be reasonably required by Blue Cross and Blue Shield of Memphis for the purpose of . . . effecting changes in family status and transfers of employment of covered employees, processing terminations[] and/or determining when and whether eligibility under the group contract has ended." (Defs.' Ex. 1 at 2, ¶ 3.)

27.

Under the contract, Burkeen "agree[d] that it will notify Blue Cross and Blue Shield of Memphis of those persons desiring continuation coverage and/or conversion coverage under Federal or State law as provided for either in the group contract and/or herein." (Defs.' Ex. 1 at 2, ¶ 3; Trial Tr. 281:12-282:17.)

28.

Burkeen also agreed to

give timely notice (but in no event more than 30 days) to Blue Cross and Blue Shield of Memphis in writing with the following information when a qualifying event occurs: (1) name and address of qualified beneficiaries, (2) certificate number of qualified beneficiaries, (3) type of qualifying event, (4) date of qualifying event, and (5) applicable premium.

(Defs.' Ex. 1 at 3, ¶ 2.)

29.

Finally, Burkeen explicitly agreed under the Enrollment Agreement to perform the duties of "plan sponsor" and "plan administrator for all purposes under ERISA including any and all reporting, disclosure or other fiduciary requirements." (Defs.' Ex. 1 at 3, ¶ 6.)

30.

Plaintiff has failed to show that Defendants had any discretion, control, or authority over the plan's management or administration except with respect to activities related to administering claims for health insurance benefits under the Plan.

31.

Although the Enrollment Agreement does state that BCBS Memphis would provide "benefit booklets, notices, or other materials" to Burkeen for distribution, the Agreement does not state that these publications are provided pursuant to ERISA or that they must contain the information required by ERISA. (Defs.' Ex. 1 at 3, ¶ 5.) To the contrary, Burkeen was required "[t]o perform all functions necessary to keep the group health benefits program . . . in compliance with [ERISA]." (*Id.* at 3, ¶ 6.)

32.

Plaintiff has further failed to show that BCBS Memphis in practice acted as Plan Administrator or fiduciary. (Trial Tr. 299:3-300:25.) Rather, BCBS Memphis had the limited role of making claim decisions, such as confirming medical necessity before claims were paid. (*Id.*)

33.

Thus, BCBS Memphis' fiduciary responsibilities were limited to claim

administration duties delegated to it by the Enrollment Agreement with Burkeen and BCBS Memphis was a fiduciary only with respect to its activities in administering claims for health insurance benefits under the plan.

34.

Because Plaintiff has failed to establish that Defendants were fiduciaries with respect to the activities of which Plaintiff's complains, the Court finds for Defendants on Plaintiff's claim of breach of fiduciary duty.

B.      Plaintiff has failed to establish that Defendants breached any duty

35.

Plaintiff has likewise failed to establish that there was any fiduciary duty owed to Plaintiff which Defendants breached.

36.

Plaintiff stated in his opening statement that he would prove that Defendants had a duty to "notify [him] of [his] rights and obligations under that law [ERISA.]"  (Trial Tr. 32:17-33:2.)  Specifically, Plaintiff complained of the failure of Defendants to include in a "plan benefit summary . . . [his] rights and obligations . . . to get conversion coverage without pre-existing conditions."   (Trial Tr. 29:18-30:1.)   Plaintiff refers to the obligations provided in 29 U.S.C. § 1022 and § 1024 which concern the content of a summary plan description and disclosures to the Secretary of Labor.  (Trial Tr. 32:17-23.)

37.

Plaintiff, however, has provided no evidence that such duty existed on the part of Defendants.

38.

The mere fact that Defendants provided Burkeen with benefit booklets does not somehow obligate Defendants to provide summary plan descriptions or reports to the Secretary of Labor.   Those obligations are undertaken by the plan administrator in accordance with 29 U.S.C. § 1021, § 1022, and § 1024.

39.

As this Court previously found, Defendants were not plan administrators with respect to Plaintiff's plan and did not otherwise function as plan administrators for Plaintiff's plan. (Order 6-9, July 20, 2006, ECF No. 98.)

40.

Thus, the Defendants do not owe the obligations contained in sections 1022 or 1024.   *See, e.g., Barnes v. Lacy,* 927 F.2d 539, 544 (11th Cir. 1991) (district court erred in creating implied additional duty of disclosure not found in ERISA).   Furthermore, as explained above, Defendants were not fiduciaries.

41.

Plaintiff has provided no evidence that these Defendants owed the duties to Plaintiff of which he complains or that Defendants failed to fulfill any duties that were owed to Plaintiff.   Plaintiff's claim must therefore fail for this additional reason.

III.    **Plaintiff's previously litigated claims**

42.

At trial, Plaintiff also briefly asserted that he is entitled to default judgment and statutory penalties pursuant to 29 U.S.C. § 1132(c)(1) and (c)(3).   (Trial Tr. 30:2-12,

31:21-32:6.)

43.

These issues have already been litigated and decided against Plaintiff in this case. (Order 9, July 22, 2005 (denying Plaintiff's motion for default judgment); Order 6-9, July 20, 2006 (granting summary judgment for Defendants on Plaintiff's § 1132(c) claims).)

44.

Under the law of the case doctrine, the Court declines to determine issues previously ruled upon by the District Judge. *See Pepper v. United States*, -- U.S. --, 131 S. Ct. 1229, 1250 (2011) (discussing law of the case doctrine); *Salazar v. Buono*, --U.S.--, 130 S. Ct. 1803, 1825 n.1 (explaining that the law of the case doctrine "comes into play only if an issue [the court is] asked to resolve has already been decided in the same litigation").

**PENDING MOTIONS**

After trial, Plaintiff filed two motions.  The first is a Motion for Court to Take Judicial Notice (ECF No. 194) filed on February 21, 2012.  Therein Plaintiff asks the Court to take judicial notice of one of Plaintiff's post-trial briefs and an attachment thereto (ECF No. 185).  Plaintiff is alleging that sanctions are appropriate against Defendants for "fraudulent acts" committed by Defendants.  To the extent that Plaintiff is asking the Court to review his post-trial brief and all attachments thereto, Plaintiff's motion is GRANTED.  The Court has thoroughly reviewed all submissions by Plaintiff. However, Plaintiff has not established that there is any ground for sanctions to be ordered by the Court against Defendants.  Consequently, Plaintiff's motion is DENIED regarding

26

sanctions.

Plaintiff filed a second Motion for Court to Take Judicial Notice (ECF No. 197) on March 7, 2012.  Therein Plaintiff asks the court to "consider in any award in its final judgment Order to the Plaintiff be paid by the Defendants error and omission insurance and not allow the award be passed and absorbed by the insured of the insurer the Defendants."  (Mot. for Ct. to Take Judicial Notice 1, ECF No. 197.)  Because the Court is not granting judgment in favor of Plaintiff or any damages to Plaintiff, Plaintiff's motion is DENIED AS MOOT.

## CONCLUSION

For the aforementioned reasons, the Court finds in favor of Defendants.  Plaintiff's action is time-barred under 29 U.S.C. § 1113(2).  Furthermore, even if Plaintiff's claim was not time-barred, he has failed to meet his burden of proof and establish that Defendants breached any fiduciary duty owed to him pursuant to 29 U.S.C. § 1132(a)(3). Judgment shall be entered in favor of the Defendants.

SO ORDERED, this 4th day of May, 2012.

S/Stephen Hyles
UNITED STATES MAGISTRATE JUDGE